IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MICHAEL D. LEBERMAN,            )
                               )
            Plaintiff,          )
                               )
    v.                          )    Case No. 2:18-cv-555-RAH
                               )              [WO]
STATE OF ALABAMA BOARD          )
OF PARDONS AND PAROLES,         )
                               )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination case filed by Michael D. Leberman (Leberman) who is, and was at all times pertinent to the dispute before the court, employed as a probation officer for the State of Alabama Board of Pardons and Paroles (Board or ABPP).  Leberman, a white male, claims he has been subjected to a hostile work environment and was discriminated and retaliated against on account of his race and sex.

Leberman brings suit against the ABPP as well as several of his co-employees and supervisors under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII) and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (§ 1981). The Defendants have filed a motion for summary judgment (Doc. 61) (the motion), Leberman a response (Doc. 70), and the Defendants a reply (Doc. 72).  The motion is therefore ripe for resolution.  For good cause shown and for the reasons that follow, the Defendants' motion is due to be granted.

I.      BACKGROUND

In October 2008, the ABPP hired Leberman as a probation/parole officer in the Guntersville Field Office. (Doc. 62-3 at 17.)  From May 2013 to December 2016, David Bryan served as the officer in charge (OIC) of the Guntersville office and was therefore Leberman's direct supervisor. (Doc. 62-5 at 2–3.)  In April 2017, Patricia Uselton, a white female in her forties, replaced Bryan as the OIC and thereby became Leberman's supervisor. (Doc. 62-6 at 2.)

In 2014, Reydonya Richardson, a black female, became the district manager, to which the OIC reported.  This change in management was of apparent concern to Leberman, as he began keeping notes in a timeline and surreptitiously recording workplace conversations with his co-employees.  (Doc. 62-3 at 8, 9, 11; Doc. 62-4.)  On June 3, 2016, he lodged a grievance, complaining of several incidents involving Richardson occurring on September 24, 2015, October 6, 2015, October 14, 2015, January 27, 2016, and February 18, 2016, that concerned undue scrutiny, unjustified poor audits, differential treatment, and unjustified counseling sessions.  (Doc. 71-21.)  According to Leberman, until shortly after Richardson's arrival, he had never received any disciplinary actions.

According to the individual Defendants, both white and black (including Elliot King, Bryan, Uselton, and Richardson), they observed a pattern of average-to-poor performance by Leberman. (Doc. 62-8 at 4.)  Bryan, who was the OIC in the Guntersville office and Leberman's direct supervisor before and after Richardson's arrival, had concerns about Leberman's work performance. (Doc. 62-5.)  Uselton likewise observed many issues with his work performance when supervising him, including his unwillingness

to improve even when she tried to give him constructive criticism. (Doc. 62-6.)  Even Elliot King, a district manager friendly with Leberman, described Leberman's work as average. (Doc. 62-7 at 6.)

Leberman's perceived performance issues did not improve and eventually, in 2017, became so glaring that Richardson issued him two warnings, one on January 31, 2017 and another on April 20, 2017, for insubordination. (Doc. 62-2; Doc. 62-9; Doc. 62-10; Doc. 62-11.)

Dissatisfied with his continued poor treatment, Leberman submitted an intake questionnaire to the Equal Employment Opportunity Commission on August 17, 2017, in which he indicated that he wanted to file a charge of discrimination based on race, sex, and age. (Doc. 62-3 at 32; Doc. 62-16.)   He identified Richardson as his supervisor, and identified two other probation officers he believed were receiving better treatment: Sedric Clark (Clark), a black male in his forties, and Jeremy Colvin (Colvin), a white male in his late thirties. (Doc. 62-3 at 33; Doc. 62-16.)   And in particular, he recounted his history of counseling and discipline since the time that Richardson became his supervisor, claimed that Richardson retaliated against him for assisting with firearms training, and claimed that he was experiencing a hostile work environment because of his disproportionately high caseload and because he was being overly scrutinized and criticized compared to others in the office. (Doc. 62-16.)

A few weeks later, on September 25, 2017, Leberman filed a formal charge with the EEOC. (Doc. 62-17.)  In it, he complained of several incidents that had transpired years earlier, including a "bad audit" of his caseload that he had received in November 2014

(within three weeks of Richardson's promotion to the district manager position), and counseling he received first on October 6, 2015, and again on January 27, 2016. (*Id.* at 5.) He also complained that Richardson was auditing his caseload more often than other officers, that he had more cases than other officers in Guntersville, and that Richardson wrongly issued him a warning in January 2017. (*Id.* at 6.)  Finally, Leberman provided the EEOC with a breakdown of the racial makeup of ABPP employees in 2014 as compared to 2017, which, according to him, demonstrated there had been an increase in the overall percentage of black employees to the detriment of white employees. (*Id.* at 10–11.)

 One month after filing his charge, on October 25, 2017, Uselton issued a written reprimand to Leberman concerning his work performance for the period from July through October 2017, most of which she noted to have been in violation of the 2009 ABPP Manual. (Doc. 62-2; Doc. 62-11.)  Needless to say, Leberman did not agree with the assertions in the reprimand.  According to Leberman, he was falling behind in his work because Uselton had dumped additional cases on him that Spring.  As he saw it, he was being set up to fail because the audit Richardson performed in the Fall of 2017 included the cases that were transferred to him several months earlier.

The written reprimand negatively impacted Leberman's overall performance score in his annual review, dropping him to an overall "partially meets standards" level and thereby disqualifying him for a merit raise that year. (Doc. 62-2.)  Until then, Leberman had received scores each year signifying that he "me[t] standards" or "exceed[ed] standards."  (*Id.*)  Following the 2018 review, Leberman's annual performance scores

4

returned to a level where he either "exceed[ed] standards" or "me[t] standards", and Leberman thereby qualified for merit raises once again.  (*Id.*)

On December 18, 2017, Leberman amended his prior EEOC charge. (Doc. 62-19.) This time, he complained that Richardson used her position of authority to harass him and discriminate against him and that she was retaliating against him for filing his EEOC charge in September 2017. (*Id.*)  Concerning the harassment, Leberman again described frequent audits of his work, increased scrutiny and criticism of his work, and assignment to him of more cases than to others. And as evidence of retaliation, he identified the written reprimand Uselton previously had issued. (*Id.*)

Sometime in early 2018, Leberman was removed as a firearms trainer at the ABPP, an uncompensated task he had been performing for approximately ten years. (Doc. 62-14 at 6, 7–8; Doc. 62-15 at 5; Doc. 62-3 at 16.)  According to the ABPP, Leberman was relieved of this task because of his poor performance and increasing caseload.

On March 16, 2018, Leberman amended his EEOC charge a second time.  (Doc. 62-21.)  He again complained of the October 25, 2017, reprimand, his 2018 performance review that was affected by the reprimand, Richardson's audits of his work, and the removal of his firearms instructor duties.  He also claimed that Uselton's use of profane language when talking to "most everyone in the office" created a hostile and abusive work environment. (*Id.*)

Although he remains employed with the ABPP and has received no other reprimands, Leberman filed this suit on June 5, 2018.

## II.   STANDARD OF REVIEW

5

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56 [] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (citation and internal quotation marks omitted).

On a motion for summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).   Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257.  If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1565, n.6 (11th Cir. 1997); *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995).

## III.   ANALYSIS

Leberman asserts three claims of discrimination and retaliation—all principally related to his October 2017 reprimand.  Because he brings each of these claims pursuant to both Title VII and § 1981, and because these statutes share an analytical framework and have the same general requirements of proof, the court will examine Leberman's substantive discrimination and retaliation claims in tandem. *See CBOCS W., Inc. v. Humphries,* 553 U.S. 442, 457 (2008); *Chapter 7 Trustee v. Gate Gourmet, Inc*., 683 F.3d 1249, 1256–57 (11th Cir. 2012).

But first, the court would be remiss if it did not note that the party opposing summary judgment must spell out his arguments squarely and distinctly, or else forever hold his peace, as the court may ignore arguments not adequately developed by the nonmovant.  *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999).

"[T]he onus is upon the parties to formulate arguments." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

Here, Leberman's responsive brief presents precious little legal citation and fails to address several of the Defendants' stated grounds for summary judgment. Even more confounding is the lack of clarity the response gives as to which claims raised in the Third Amended Complaint Leberman truly seeks to prosecute and which he concedes.

As best as the court can decipher, Leberman's case centers upon two events: the October 2017 written reprimand that resulted in the loss of a merit raise in 2018 and the allegedly retaliatory hostile work environment resulting from the filing of his EEOC charge in September 2017. All other allegations raised in the Third Amended Complaint, such as discrimination in the context of his loss of responsibilities as a firearms instructor, disparate treatment in work assignments, and increased management scrutiny, are considered abandoned. *Resol. Tr. Corp.*, 43 F.3d at 599 ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

### A.    Count I- Leberman's Race Discrimination Claims Against the ABPP Concerning His October 2017 Reprimand

In Count I, Leberman brings a race discrimination claim under Title VII relating to his reprimand.[1] Because he does not present direct evidence of discrimination, to demonstrate a case of race discrimination based on circumstantial evidence he may instead

---

[1] Leberman made no age discrimination claim in Count I. (Doc. 34 at 8.) Therefore, to the extent Leberman attempts to make a claim for age discrimination in his responsive brief (*see* Doc. 62-3 at 33–34), no relief is available to him.

proceed under the *McDonnell Douglas* framework by first establishing a prima facie case of discrimination.[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To do so, Leberman must present evidence that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated individual outside of his protected class. *Maynard v. Bd. of Regents of Div. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 82).

After establishing a prima facie case of discrimination, the burden shifts to the ABPP to articulate a legitimate nondiscriminatory reason for its employment action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Leberman may then seek to demonstrate that the proffered reason was not the true reason for the employment action "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *see also Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).

Here, the ABPP focuses its summary judgment motion on Leberman's failure to show that he was treated less favorably than a similarly situated individual outside his protected class and his failure to sufficiently rebut the ABPP's stated reasons for the reprimand. It also bears noting that while Leberman's Third Amended Complaint voices a buffet of alleged discriminatory actions, the only action Leberman advances that reflects

---

[2] Leberman does not argue for application of the convincing mosaic test.

a material change in the terms and conditions of his employment, and the only action the court addresses, is the written reprimand that disqualified him for a merit raise. *See Gillis v. Ga. Dep't of Corrs.*, 400 F.3d 883, 887 (11th Cir. 2005) ("[A]ctions that affect compensation are considered adverse employment actions.").  His other gripes, whether those be the loss of the ability to serve as a firearms instructor, unfair work assignments, increased caseload, and increased audits or scrutiny simply are not actionable. *See, e.g., Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001) (loss of officer-in-charge designation, increased work load/assignments, and negative job criticisms, did not constitute actionable adverse employment actions); *Grimsley v. Marshalls of MA, Inc.*, 284 F. App'x 604 (11th Cir. 2008) (same, increased work load); *Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013) (same, counseling and scolding). Nor does Leberman provide any argument to advance those claims in his responsive brief, so they are largely moot regardless.

As to the ABPP's first challenge, which centers on Leberman's prima facie showing, Leberman must demonstrate that he was treated less favorably than someone outside his protected class; that is, he must offer a comparator. *See Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1091 (11th Cir. 2004).  To be a valid comparator, an employee must be similarly situated "in all material respects," but need not be "nearly identical" to the plaintiff. *Lewis v. Union City, GA*, 918 F.3d 1213, 1218–19 (11th Cir. 2019) (en banc).  A valid comparator turns "not on formal labels, but rather on substantive likenesses." *Id*. at 1228.  "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is

present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (emphasis removed), *abrogated on other grounds by Lewis*, 918 F.3d at 1224–25.

Leberman fails on this end.   In his Third Amended Complaint and summary judgment response, Leberman vaguely references four employees—Jeremy Colvin (white male), Sedric Clark (black male), Richardson (black female), and Stacey Brown (black female).   Of those, only Colvin and Clark are probation officers like Leberman. And although it appears they were treated more favorably than him—that is, they were audited less than Leberman, received more favorable appraisal scores, and supervised fewer active offenders—they are not proper comparators because there is no evidence that they committed similar infractions.   Indeed, there is no evidence whatsoever indicating that Colvin and Clark performed their duties poorly, or as poorly as Leberman, and the fact that they may have been treated more favorably than him in other aspects of the job does not make them proper comparators for a disciplinary action founded on poor performance.

Concerning Richardson and Brown, Leberman identifies them as employees at the ABPP who failed to perform their jobs satisfactorily yet suffered no adverse consequences. And more specifically, Leberman claims that Richardson regularly violated policy by failing to timely complete audits of Leberman and that Brown violated policy by failing to discipline Richardson for her tardy work. (Doc. 70 at 13.)  But Leberman does not specify if or how they were similarly situated to him.  Nor could he, since the evidence shows that these two individuals were supervisors, not probation officers.   As supervisors who performed different duties, whose performances, even as chastised by Leberman, were based upon altogether different tasks, and who were subject to supervision by different

11

decisionmakers, they are not appropriate comparators for Title VII purposes. *See Lewis*, 918 F.3d at 1229; *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003). In other words, Leberman paints with too broad a brush when he contends that Richardson and Brown performed their respective jobs poorly and without discipline. By failing to present a proper comparator, Leberman is unable to meet his prima facie burden.

But even if he had met his prima facie case, and as the ABPP's second challenge to this claim points out, Leberman's discrimination claim fails for another reason. That is, Leberman has failed to rebut the ABPP's reasons for the reprimand, which are evidenced by the reprimand itself. (*See* Doc. 62-11.) As written by Uselton, Leberman violated several different provisions of the 2009 ABPP manual by failing to submit warrants and delinquency reports to a court, falsifying records concerning probationers' reporting to Leberman, failing to file a delinquency report, and disobeying a directive by his supervisor to complete a delinquency report. With this, the ABPP meets its burden of production to articulate a legitimate nondiscriminatory reason for its employment action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Leberman may then seek to demonstrate that this proffered reason was not the true reason for his reprimand "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*. at 256; *see also Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). He is unable to do so. Rather than challenge the reasons set forth in the reprimand head-on, Leberman all but acknowledges

his poor conduct when he states that as a result of his increased caseload, he "was set up for failure" because "[t]here was not enough time to compete the work assigned to him." (Doc. 70 at 5.)  He then goes on to give further credibility to the reprimand by stating that his supervisor (who was white) had more time to "find errors and omissions" in his caseload because she had increased his load by decreasing her own.  (Doc. 70 at 5.)

Leberman further argues that the 2009 manual was not a governing document because it had been replaced by the 2016 manual, and he also points to his overall satisfactory performance as reflected by eleven of the twelve annual performance reviews that he received, the one exception being the review that was negatively affected by the reprimand. He continues by explaining that even for the review period impacted by the reprimand, his performance review shows that he had satisfactorily complied with the rules. (*See* Doc. 70 at 6–7.)  He also points out that once Phil Bryant was hired as the executive director of the ABPP in 2014, the ABPP began hiring black employees at rates higher than white employees and that Bryant allegedly made a statement during a meeting that race and sex would be used to determine how cases were assigned, a statement for which Bryant was later disciplined.  (Doc. 70 at 24–25; Doc. 71-34 at 4.)

The problem for Leberman is multi-fold.  First, even if his points are true, they do not rebut head-on the reasons for the reprimand, nor could they, since Leberman largely admits the observations made in the reprimand itself concerning his poor work performance.  His failure to rebut the stated reasons for his reprimand renders his other arguments, including Richardson's citation to the wrong manual, irrelevant to his burden. After all, an "employer may fire an employee for a good reason, a bad reason, a reason

13

based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984).

Further, Leberman's other proffered evidence simply "is too weak to raise a genuine fact issue." *Alvarez,* 610 F.3d at 1268 (citing *Reeves v. Sanderson Plumbing Prod., Inc*., 530 U.S. 133, 148 (2000) (explaining that an employer is entitled to judgment as a matter of law if the plaintiff creates "only a weak issue of fact" as to whether the employer's proffered reason was untrue and there was "abundant and uncontroverted independent evidence that no discrimination had occurred"). This is especially true as to the issues surrounding Phil Bryant, none of which Leberman has shown have any direct connection with him, his work performance, or with the reprimand.

Thus, Leberman's race discrimination claims fails when analyzed under *McDonnell Douglas*.

### B.     The Race Discrimination Claim Against the Individual Defendants

In addition to the ABPP, Leberman also asserts his race discrimination claim against several individuals including Bryant, Brown, Richardson, Uselton, and Jeter through § 1983 and § 1981.  These Defendants argue they are entitled to summary judgment for a variety of reasons, some of which overlap with the reasons the ABPP argues for its entitlement to summary judgment.  But they have also raised the additional arguments that § 1983 claims do not permit respondeat superior liability, that Eleventh Amendment immunity bars all of Leberman's claims against them in their official capacities, and that § 1981 claims cannot be based on sex or age.

14

First, to the extent Leberman sues these individuals in their official capacities, these claims are due to be dismissed.  Claims asserted under 42 U.S.C. § 1983 against state officials in their "official capacity" are tantamount to suits against the state governmental entities served by such defendants and, absent waiver or consent, are barred by the Eleventh Amendment to the United States Constitution. *See McMillian v. Monroe County,* 520 U.S. 781, 785 n.2 (1997) (observing that "a suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent'") (alterations in original) (citations omitted); *see also Lassiter v. Alabama A&M University,* 3 F.3d 1482, 1485 (11th Cir. 1993) ("Official capacity actions seeking damages are deemed to be against the entity of which the officer is an agent.").  Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it. *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990)).

Second, it is well established that § 1983 claims cannot be brought against supervisory officials based on vicarious liability or *respondeat superior. See Keating v. City of Miami,* 598 F.3d 753, 762 (11th Cir. 2010); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691–95 (1978) (doctrine of *respondeat superior* is inapplicable to § 1983 actions).

Third, to the extent Leberman advances sex- and age-based discrimination claims, these claims cannot be brought under § 1981; only race claims can be brought under that section.  *See Pate v. Chilton County Bd. of Educ.*, 853 F.Supp.2d 1117, 1128–29 (M.D. Ala. 2012).

Fourth and finally, to the extent Leberman asserts a § 1983 claim for race discrimination against any of the individual defendants for their personal participation in discriminatory activity, he utterly fails to substantiate the claim for the same reasons his claims against the ABPP fail.  Summary judgment is due to be granted in favor of these Defendants as to Count I.

### C.    Count II- Retaliation

In Count II, Leberman advances a claim for retaliation. Like with his claim for discrimination, this count is largely focused on the October 2017 reprimand, which was issued approximately four weeks after Leberman filed his EEOC charge, and to a much lesser extent, the grievances lodged by Leberman in 2015 and 2016.  To the extent that Leberman premises this claim on any action other than the October 2017 reprimand, he has not sufficiently supported such an argument in his brief, and even if he had, much like with this discrimination claim, the other described actions taken by the ABPP are not actionable, even by the lesser standard that governs retaliation claims.

Leberman can demonstrate a prima facie case of retaliation by showing that (1) he engaged in protected conduct; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. *Crawford*, 529 F.3d at 970.  Once he meets this burden, the ABPP must articulate a legitimate non-retaliatory reason for its employment action, which Leberman can rebut with evidence of pretext. *See Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1181– 82 (11th Cir. 2010).  In its summary judgment motion, the ABPP challenges Leberman's ability to meet the first and third prongs.

16

As to the first prong, formal EEOC charges, including the one filed by Leberman on September 25, 2017, constitute protected conduct.   And informal complaints or grievances made to an employee's superiors and the use of an employer's internal grievance procedure can in limited circumstances also qualify as protected conduct. *See Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989).   "A complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination." *Carson v. Metro. Atlanta Rapid Transit Auth. (MARTA)*, 572 F. App'x 964, 969 (11th Cir. 2014) (citing EEOC Compl. Man. (CCH) §§ 8–II–B(2) (2006)).

Here, while acknowledging that Leberman's EEOC filing constitutes protected conduct, the ABPP separately argues that the grievances lodged in 2015 and 2016 were not protected conduct because they did not give rise to any inference that Leberman was complaining of unlawful discrimination. Indeed, to prevail on such an argument, Leberman would have to show that his complaint or grievance was based on a "good faith reasonable belief" that his employer was engaged in unlawful discrimination. *See Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).   Specifically, he must establish that he subjectively believed that unlawful discrimination against him was occurring and that his belief was objectively reasonable in light of the facts and record present. *See Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010).   "The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law." *Clover*, 176 F.3d at 1351.

A review of the 2015 and 2016 grievances shows that neither was based on a good faith reasonable belief that the ABPP was engaging in unlawful discrimination.  At most, Leberman complained of unfair treatment.  Such a complaint, however, is insufficient for the purposes of prevailing on a retaliation claim. *Murphy v. City of Aventura,* 383 F. App'x 915, 918 (11th Cir. 2010);  *Jeronimus v. Polk County Opportunity Council, Inc.,* 145 F. App'x 319, 326 (11th Cir. 2005) (plaintiff's complaint "of being 'singled out,' being subjected to 'a campaign of harassment,' and working in a 'hostile environment'" was not protected conduct where plaintiff "never suggested that this treatment was in any way related to . . . race or sex");  *Hill v. IGA Food Depot*, Case No. 2:04-cv-00966-WKW, 2006 WL 3147672, at *5 (M.D. Ala. Nov. 2, 2006) ("If he was opposing something," plaintiff did not demonstrate his supervisor had reason to know he was complaining about an illegal employment practice, where, while plaintiff did ask why the store had fewer African-American cashiers than was proportionate to its customer base, and thus might have alerted the supervisor that plaintiff was asking a question about race, that inquiry "is a far cry from alleging that an employee or the company is intentionally refusing to hire African-Americans.");  *Dowell v. Prime Healthcare Corp.*, Case No. Civ. A. 00-D-686-E, 2001 WL 611198 (M.D. Ala. May 4, 2001), *aff'd sub nom. Dowell v. Prime Healthcare*, 277 F.3d 1380 (11th Cir. 2001) ("The employee must complain of discrimination, not about unfairness and the like.");  *Webb v. R & B Holding Co*., 992 F. Supp. 1382, 1389 (S.D. Fla. 1998) ("It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred.").

18

Further, as to the third prong, Leberman has failed to show a causal connection between the grievances (and the EEOC charge) to the October 2017 reprimand.  First, even if his grievances sufficiently alleged unlawful discrimination, there is simply no temporal connection that can be made, seeing as the grievances were lodged in 2015 and 2016, respectively.  *Compare Williams v. Waste Mgmt., Inc*., 411 F. App'x 226, 229 (11th Cir. 2011) (finding that two months is insufficient to show causal connection), *and Herron-Williams*, 805 F. App'x 622, at *9 (determining that there was not enough temporal proximity to establish causal connection for retaliation claim where plaintiff-employee filed EEOC charge in March, employer responded to EEOC in July, and employee's pay was reduced in September of the same year), *with Locascio v. BBDO Atlanta, Inc*., 56 F. Supp. 3d 1356, 1370–71 (N.D. Ga. 2014) (finding sufficient proximity where plaintiff complained about discriminatory conduct in mid-July, was reassigned to "new business" sometime in August, and was terminated from employment in September, all in the same year); *cf. Robinson v. LaFarge N. Am., Inc*., 240 F. App'x. 824, 829 (11th Cir. 2007) (finding causation sufficiently alleged where adverse action occurred about two months after protected activity); *Stone v. Geico Gen. Ins. Co*., 279 F. App'x 821, 824 (11th Cir. 2008).

Unlike the grievances, however, the EEOC charge constitutes protected activity and presents a different timeline.  Generally, close temporal proximity is sufficient to make a prima facie case. *See Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007).  And here, approximately a month passed between when Leberman filed his EEOC charge on September 25, 2017, and his reprimand on October 25, 2017.  But as the Eleventh

Circuit has explained, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart v. BellSouth Telecommunications, Inc*., 231 F.3d 791, 799 (11th Cir. 2000) (citing *Clover*, 176 F.3d at 1355–56).

Given the temporal connection between the EEOC charge and the reprimand, the ABPP does not passionately challenge the temporal proximity issue.  Instead, it argues that the supervisors here—Uselton and, indirectly, Richardson—already were contemplating the reprimand before the EEOC charge was filed and that they were unaware of the EEOC charge at the time of the reprimand.  "[I]n a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006); *Buchanan v. Delta Airlines, Inc*., 727 F. App'x 639, 642 (11th Cir. 2008).  Further, to establish a causal connection, a plaintiff must show that the person who took the action was aware of the protected conduct. *Brungart*, 231 F.3d at 799.

For his part, Leberman says nothing to rebut this argument other than to baldly insist (without citation to any evidence) that the ABPP, through Brown and Richardson, "were aware of this complaint." (Doc. 70 at 24.)  With that unsupported assertion, however,

Leberman cannot meet his prima facie showing.[3]   Therefore, the ABPP is entitled to summary judgment on Count II.

### D.      Count III - Hostile Work Environment

Count III of the Third Amended Complaint asserts a Title VII hostile work environment claim against all Defendants based on Leberman's race, age, and sex and in retaliation for engaging in protected conduct.  In their summary judgment motion, the Defendants assert there is no evidence whatsoever to support such a claim.  Nor is there evidence of a retaliatory hostile work environment under the cause of action recognized by the Eleventh Circuit in *Gowski v. Peake*, 682 F.3d 1299, 1311–12 (11th Cir. 2012).

In his responsive brief, Leberman defends only a subset of this count: his claim for a retaliatory hostile work environment. As he states it, his Third Amended Complaint alleges "that the Defendants violated Title VII by subjecting him to a hostile work environment in retaliation for engaging in activity protected by Title VII, filing discrimination and retaliation claims against the Defendants." (Doc. 70 at 25.) Accordingly, the court considers this narrowed claim only and deems the race-, age-, and sex-based hostile work environment claims abandoned.

 The Eleventh Circuit recognized a Title VII claim for a retaliatory hostile work environment in *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012). There, the court announced that to succeed on such a claim, "a plaintiff must show that: (1) he engaged in

---

[3] Even if Leberman had met his prima facie case, this claim still would be dismissed because Leberman has failed to show that the ABPP's reasons for the reprimand were pretextual, just as he failed to show pretext with respect to his discrimination claim.

a statutorily protected activity; (2) he has been subject to unwelcome harassment; (3) the harassment was based on his engaging in the protected activity; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment." *Kelly v. Dun & Brandstreet, Inc*., 641 F. App'x 922, 923 (11th Cir. 2016) (per curiam).

Leberman contends that he engaged in protected activities when he (1) lodged a grievance in June 2016 detailing his concerns that Richardson was fixated on him and (2) filed an EEOC charge in September 2017. (Doc. 70 at 28.) He goes on to contend that as a result of these actions he endured a multi-year pattern of harassment and hostility that culminated in the written reprimand he received on October 25, 2017. Although Leberman does little to describe what exactly he suffered that constituted the multi-year harassment, based on the nature of the grievance, the court assumes that Leberman specifically takes issue with his supervisor's fixation on him as evidenced by increased audits, increased case assignments, the reprimand, and the removal of his firearms instructor duties.

To this, the Defendants raise three primary arguments. First, they point out that the June 2016 grievance was not protected conduct. Second, they argue there is no causal connection between the reprimand and the EEOC charge because Richardson already was drafting the reprimand when Leberman filed his charge; and more to this end, the ABPP highlights the several months that passed between the reprimand and removal of Leberman's firearms training duties. Finally, the Defendants argue that the acts of which Leberman complains are not sufficient to support the conclusion that the workplace was sufficiently hostile to support the claim. The court agrees.

First, as already discussed in the context of Leberman's retaliation claim, the June 28, 2016, grievance makes no reference to unlawful discrimination. For that matter, the grievance does not make any connection whatsoever between the complained-of conduct and any protected characteristic such as his race or sex. Instead, the grievance alleges only that Richardson failed to treat him fairly, especially when compared to other probation officers such as Clark. It bears iterating that to be considered protected activity, Leberman must, at the very least, communicate his belief that discrimination is occurring to the employer, and cannot rely on the employer to infer that discrimination has occurred. *Demers v. Adams Homes, Inc*., 321 F. App'x 847, 852 (11th Cir. 2009) (internal quotes omitted). And here, he did not.

This leaves for consideration the events occurring after the EEOC charge was filed. As it concerns the discrete act of the reprimand, the Defendants have provided argument and evidence (*see, e.g*., Doc. 62-6; Doc. 62-23 at 11) that the reprimand already was being drafted at the time the EEOC charge was filed, and therefore Leberman cannot show retaliatory intent. *See Redd v. United Parcel Service, Inc*., 615 F. App'x 598, 606 (11th Cir. 2015) ("To demonstrate a causal connection, the plaintiff must show that (1) the decision maker knew of his protected activity, and (2) the protected activity and adverse action were not wholly unrelated."). In other words, a decisionmaker cannot have been motivated to retaliate by something unknown to him or her. *Brungart*, 231 F.3d at 799. "[U]nrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct" generally extinguishes any causal connection between the protected activity and the adverse employment action. *Id.*

23

Here again, Leberman offers no rebuttal evidence.  In fact, he does not even address this point in his briefing.  Certainly, through his silence, Leberman has not presented any evidence that raises a genuine issue of material fact on the issue of the ABPP's (Richardson in particular) knowledge of his protected activity, and therefore this claim as it relates to this discrete act fails.

Lastly, the Defendants argue that Leberman has fundamentally failed to present sufficient evidence that the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment.  "A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Miller v. Kenworth of Dothan, Inc*., 277 F.3d 1269, 1275 (11th Cir. 2002) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21.

A court must consider the following factors in evaluating whether conduct is severe or pervasive enough to create an objectively hostile or abusive work environment: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller*, 277 F.3d at 1276. Courts must employ common sense and carefully consider social context when

determining whether a plaintiff has alleged facts that a jury could reasonably find created an objectively hostile or abusive work environment. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998).

The conduct that Leberman complains of here fails to trigger Title VII's scrutiny by a long shot. Leberman points to the discrete acts of being reprimanded and having his firearms training duties removed, but from an evidentiary standpoint, those examples are wholly insufficient to support a retaliatory hostile work environment claim. Further, even if the court added the increased scrutiny of Leberman and his unfavorable performance to the mix, the cumulative effect of the ABPP's actions still would not rise to the level of a hostile work environment. Indeed, no evidence suggests that any racist, sexist, or ageist language was directed at Leberman, or that any discriminatory intimidation, ridicule, or insult was employed at his expense. Instead, Leberman's complaints and concerns, at best, indicate he was treated unfairly. However, unfairness in the workplace simply cannot support a cause of action for a hostile work environment, and the Eleventh Circuit has rejected such claims even in cases alleging some amount of vulgarity and racist language; none of which exists here. *See Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010) (finding that a supervisor's remarks that plaintiff was a "dumb s--t," "stupid f--k," and "dumb f--k," fell "under the rubric of general vulgarity that Title VII does not regulate."); *McCann v. Tillman,* 526 F.3d 1370 (11th Cir. 2008) (finding that a white supervisor using racist language about employee did not create hostile work environment); *Barrow v. Ga. Pac. Corp*., 144 F. App'x 54, 57–58 (11th Cir. 2005) (discussing how the presence of racist symbols and use of racial slur by supervisor did not constitute hostile

work environment); *Miller*, 277 F.3d at 1276 (explaining how a supervisor's ethnic slurs about an employee were so frequent that they permeated the workplace, thus demonstrating hostile work environment).

Therefore, the court will likewise grant summary judgment on Count III in favor of Defendant ABPP.[4]

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Doc. 61) is due to be and is hereby GRANTED in full. This matter in its entirety is hereby DISMISSED.  A separate judgment will issue.

DONE, on this the 27th day of August, 2021.

                            /s/ R. Austin Huffaker, Jr.
                            R. AUSTIN HUFFAKER, JR.
                            UNITED STATES DISTRICT JUDGE

---

[4] Because Leberman brought this count under Title VII, which does not apply to individuals, the court assumes that Leberman advances this claim against the ABPP only. To the extent he also brings it against the individual Defendants, they too are entitled to summary judgment for the additional reason that Title VII claims cannot be brought against individuals.